# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF GEORGIA ATLANTA DIVISION

SIS, LLC,                                    *
                                             *
            Plaintiff,                       *
                                             *
    v.                                       *          1:17-CV-01816-ELR
                                             *
STONERIDGE HOLDINGS, INC., et al.,*
                                             *
            Defendants.                      *
                                             *

---

# O R D E R

---

Presently before the Court is Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint [Doc. 58]. The Court's rulings are set forth below.

## I.    Background

### a.    Factual Background

The essence of Plaintiff SIS, LLC's claims surround its allegation that Defendant Stoneridge Holdings, Inc. circumvented a Subcontract Services Agreement (hereinafter, "Agreement") between the parties, which, prohibited Defendant Stoneridge from directly providing competing services to Plaintiff's customers, particularly APi Group, Inc. (hereinafter, "APi Group"). See generally Am. Compl. [Doc. 55]. Specifically, Plaintiff alleges that in March 2014, it finalized

negotiations with APi Group to become its "prime service contractor with regard to APi Group's implementation of multiple Microsoft software packages (the "APi Group Project")." Id. at ¶ 9.  Subsequently, in March and April 2014, Plaintiff alleges that it engaged in discussions with Defendant Stoneridge, including in-person meetings attended by Defendants Newell and Boedigheimer, regarding Defendant Stoneridge providing subcontract services on the APi Group Project. Id. at ¶ 10.  Plaintiff alleges that early in the parties' discussions, the parties entered into a Confidentiality Agreement, under which Stoneridge agreed to "prevent any use of Confidential Information other than to facilitate discussions about a business relationship between the parties." Id. at ¶ 11.  Plaintiff alleges that the subcontract services "negotiations took place by, among other things, telephone calls and emails from Stoneridge" and Defendants Newell and Boedigheimer handled negotiations for Stoneridge. Id. at ¶ 12.

Plaintiff further alleges that

[b]y July 2014, the Plaintiff and Defendants arrived at a meeting of the minds as to all key terms of the subcontract arrangement. For Defendants part, Newell and Bodigheimer, in particular, specifically "agreed on billing and terms as well as the other issue, with a year buffer on working with our clients directly" as reflected in an email from Thomas to Newell, with a courtesy copy to Boedigheimer, dated July 14, 2014. The parties' focus then turned to committing those terms to writing. On or about July 21, 2014, in a phone call attended by Maxwell Thomas of SIS and Newell and Boedigheimer of Stoneridge, the parties finalized the language of the written agreement and Stoneridge requested that Thomas revise the document accordingly and send it for signature. On July 21, 2014 Thomas sent Stoneridge "signed

> and cleaned up [Subcontract Services and Statement of Work]
> agreements for your signature." The Subcontract Services Agreement
> attached to the email reflects the terms agreed to by the parties in their
> earlier phone call. True and correct copies of these email and
> agreements are fully incorporated herein and included as Exhibit B."

Id. at ¶ 14 (alterations in original). Days later, Plaintiff alleges that Stoneridge began

providing work directly with APi Group, and based on Stoneridge's representations

and performance, Plaintiff "presumed Stoneridge had signed the [Agreement] and

would be providing fully executed copies of it[.]" Id. at ¶ 15.

Plaintiff alleges that Defendant Newell notified Plaintiff via e-mail on August

4, 2014, that "Stoneridge decided to stop providing services under the [A]greement

because it had received less subcontract work than expected 'when it originally

negotiated the deal.'" Id. at ¶ 23 (alterations omitted). Furthermore, Plaintiff states

that "Stoneridge contracted and worked directly with APi Group during the term of

the Agreement" and by January 2015, Stoneridge contracted directly with APi Group

"to perform the very services Plaintiff had provided and replaced Plaintiff as a prime

service contractor" for the APi Group Project. Id. at ¶ 24.

  b. Procedural Background

On May 19, 2017, Plaintiff filed suit against Defendant Stoneridge Software,

Inc. alleging one count of breach of contract. Compl. [Doc. 1]. Specifically,

Plaintiff alleged that Defendant Stoneridge circumvented the Agreement between

the parties, which imposed a duty on Defendant "to refrain from direct work and

contracting with Plaintiff's customers during the Agreement term and thereafter for a year." Id. at ¶ 24.  On July 27, 2017, Defendant Stoneridge answered Plaintiff's Complaint and included counterclaims alleging breach of contract, unjust enrichment, quantum meruit, account stated, and attorneys' fees pursuant to O.C.G.A. § 13-6-11.  [Doc. 14].

Before discovery closed, Plaintiff filed a "First Amended Motion for Leave to File Second Amended Complaint" [Doc. 30], which Defendant Stoneridge opposed [Doc. 32].  After careful review, the Court granted Plaintiff leave to amend, and thus, Plaintiff's Second Amended Complaint [Doc. 55] became the operative complaint in this case.   Plaintiff's Second Amended Complaint added Eric Newell, Stoneridge's founder and chief operating officer, and Scott Boedigheimer, an officer of Stoneridge, as defendants (hereinafter, "Individual Defendants") and corrected Defendant Stoneridge's name from Stoneridge Software, Inc. to Stoneridge Holdings, Inc.  Additionally, Plaintiff's Second Amended Complaint alleged the following claims:

- Breach of Contract against Defendant Stoneridge (Count 1);
- Promissory Estoppel against Defendant Stoneridge (Count 2);
- Negligent Misrepresentation against all Defendants (Count 3);
- Fraud against all Defendants (Count 4);
- Tortious Interference against all Defendants (Count 5);
- Misappropriation of Trade Secrets against all Defendants (Count 6); and
- Attorney's Fees and Punitive Damages.

Subsequently, Defendants filed a Motion to Dismiss Plaintiff's Second Amended Complaint [Doc. 58],[1] which Plaintiff opposes [Doc. 59]. This motion is now ripe for the Court's review.

## II.   Discussion

### a.   Legal Standard

When considering a 12(b)(6) motion to dismiss, the Court must accept as true the allegations set forth in the complaint drawing all reasonable inferences in the light most favorable to the plaintiff. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-56 (2007); United States v. Stricker, 524 F. App'x 500, 505 (11th Cir. 2013) (per curiam).   Even so, a complaint offering mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" is insufficient.   Ashcroft v. Iqbal, 556 U.S 662, 678 (2009) (quoting Twombly, 550 U.S. at 555); accord Fin. Sec. Assurance, Inc. v. Stephens, Inc., 500 F.3d 1276, 1282-83 (11th Cir. 2007). Further, the complaint must "contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'"   Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 570).   Put another way, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."   Id.   This so-called "plausibility standard" is not akin to a

---

[1] Defendants also filed a Motion to File Confidential Document Under Seal [Doc. 62], which Plaintiff did not oppose.  For good cause shown, the Court grants Defendants' motion to seal.

probability requirement; rather, the plaintiff must allege sufficient facts such that it is reasonable to expect that discovery will lead to evidence supporting the claim.  Id.

   b. Analysis

Defendants move to dismiss with prejudice Plaintiff's claims for breach of contract, promissory estoppel, tortious interference, negligent misrepresentation, and fraud claims, and, move to dismiss all of Plaintiff's claims against Individual Defendants, leaving Plaintiff's claim for misappropriation of trade secrets, attorney's fees, and punitive damages against Defendant Stoneridge.  The Court addresses each of these arguments below.

   i.  *Claims Against Individual Defendants*

Addressing all of Plaintiff's claims against Individual Defendants, Defendants argue that "Plaintiff's improper claims against Newell and Boedigheimer are nothing more than a thinly veiled attempt to harass Stoneridge and pressure settlement." [Doc. 58-1 at 20].   Specifically, Defendants argue that Plaintiff admits that Individual Defendants were handling contract negotiations for Defendant Stoneridge and there are no allegations of personal benefit or gain by Individual Defendants, and thus, "[t]here is simply no legal basis for personal liability against either Newell or Boedigheimer."  [Id. at 20-21].

   "[A] corporate officer may be held liable for a corporate tort when he cooperated or participated in the tort or directed it to be done."  BTL COM, Co. v.

Vachon, 628 S.E.2d 690, 695 (Ga. Ct. App. 2006) (citing Jamal v. Hussein, 515

S.E.2d 407 (Ga. Ct. App. 1999); Plane v. Uniforce MIS Svcs. of Ga., 503 S.E.2d

621 (Ga. Ct. App. 1998); Jennings v. Smith, 487 S.E.2d 362 (Ga. Ct. App. 1997));

see also Wachovia Ins. Servs., Inc. v. Fallon, et al., 682 S.E.2d 657 (Ga. Ct. App.

2009) (analyzing misappropriation of trade secrets claim against company and its

founder).   Plaintiff alleged several incidents purportedly involving Individual

Defendants and actions Plaintiff took purportedly due to Individual Defendants'

representations. Am. Compl. at ¶¶ 10, 12, 14, 23.  At this stage, Defendants have

not provided the Court with any reason why Plaintiff's claims against Individual

Defendants fail simply because they are individuals, and the Court finds that it is

plausible that discovery will lead to evidence supporting these claims.  Accordingly,

the Court denies Defendants' request to dismiss Individual Defendants simply

because they are individuals.

### ii. Breach of Contract (Count 1)

Defendants argue that Plaintiff fails to sufficiently plead a breach of contract

claim because Plaintiff cannot allege mutual assent between the parties.  Plaintiff

alleges that the parties had a meeting of the minds regarding the essential terms of

the Agreement by at least July 14, 2014, as shown by, *inter alia*, Plaintiff's e-mail

to Defendant Boedigheimer stating "[w]e primarily agreed on billing and terms as

well as the other issue, with a year buffer on working on our clients directly.  I will send over documents today for your final review." [Doc. 55 at 26].

"To constitute a valid [written or oral] contract, there must be parties able to contract, a consideration moving to the contract, the assent of the parties to the terms of the contract, and a subject matter upon which the contract can operate." O.C.G.A. § 13-3-1; see also Turner Broad. Sys., Inc. v. McDavid, 693 S.E.2d 873, 877 (Ga. Ct. App. 2010) (citing O.C.G.A. § 13-3-1).  "Even complex or expensive contracts may be oral, as long as the evidence establishes the parties' mutual assent to all essential terms of the contract." Turner Broad. Sys., 693 S.E.2d at 878 (citations omitted).  "In determining whether there was a mutual assent, courts apply an objective theory of intent whereby one party's intention is deemed to be that meaning a reasonable man in the position of the other contracting party would ascribe to the first party's manifestations of assent, or that meaning which the other contracting party knew the first party ascribed to his manifestations of assent." Id. (quotation and citations omitted).

As an initial matter, Defendants do not appear to challenge Plaintiff's allegation that Defendant Stoneridge breached the Confidentiality Agreement. Defendants only dispute whether Plaintiff sufficiently alleged mutual assent as to Plaintiff's allegation that Defendants breached the Subcontract Services Agreement.

8

Plaintiff alleges in its Second Amended Complaint that the parties began negotiations regarding the APi Group Project in at least March 2014 and continued those negotiations into July 2014, which Plaintiff supports with e-mails between the parties indicating agreement on at least some terms of the Agreement.

Defendants argue that the August 4, 2014 e-mail that Defendant Newell sent to Plaintiff indicates that Defendants were no longer interested in contract negotiations, and thus, the parties had not yet entered into a contract. [Doc. 58-1 at 5].

The August 4, 2014 e-mail, attached to Plaintiff's Second Amended Complaint, states:

> Mark & Max-
>
> Based on the change in the schedule and resources requested from our team, we do not plan to go forward with the subcontractor agreement to assist you with the implementation of the API Group. When we originally negotiated the deal, we expected it to be 3 people paid 40 hours per week for 21 months. What has resulted is 2 people extremely part-time through the Analysis phase and no promises for the future deployment of the project. Given the lower rate and uncertainty around the schedule, this just isn't an appealing opportunity for us - so we are going to step aside.
>
> If you would like to request any payroll or other AX training from our team members, we'd be happy to work something out for that.
>
> Best of luck with the implementation and let us know if you want to catch up when you're in Minneapolis. Let me know if you have any questions.
>
> Thanks,
> Eric

Am. Compl. at 40.

The Court cannot determine from this e-mail, as Defendants argue, that the parties clearly were not done negotiating essential terms of the contract, and thus, had not yet had a meeting of the minds. Defendants' August 4, 2014 e-mail could be read to indicate that Defendants simply were dissatisfied with the number of hours of subcontract work under the Agreement – not that the essential terms of the contract were not yet agreed upon. And, at this stage, the Court must draw all reasonable inferences in the light most favorable to Plaintiff.[2]  While the Court has concerns regarding the *probability* of Plaintiff proving the parties had a meeting of the minds, at this juncture, the Court must simply determine if it is *plausible* that discovery will lead to evidence supporting Plaintiff's claim.    After careful consideration, the Court finds that Plaintiff sufficiently alleged its breach of contract claim.

Accordingly, the Court denies Defendants' motion to dismiss as to Plaintiff's breach of contract claim.

---

[2] The parties also dispute whether Defendants accepted the Agreement by beginning performance; however, the Court need not reach this argument as the Court finds that at this early stage, Plaintiff's allegations of the parties' telephone conversations and e-mail communications are enough to allege mutual assent.

### iii.  Promissory Estoppel (Count 2)

Defendants argue that Plaintiff's promissory estoppel claim fails because Plaintiff fails to allege what promise(s) Defendants made to Plaintiff.  [Doc. 58-1 at 16].  Pursuant to Georgia law:

> A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise. The remedy granted for breach may be limited as justice requires.

O.C.G.A. § 13-3-44.  Based on § 13-3-44, the essential elements of a promissory estoppel claim are therefore (1) defendant made a promise; (2) defendant should have reasonably expected the plaintiff to rely on the promise; (3) the plaintiff relied on the promise to his or her detriment; and (4) an injustice can only be avoided by enforcement of the promise.  Hendon Prop., LLC v. Cinema Dev., LLC, 620 S.E.2d 644, 649 (Ga. Ct. App. 2005).

"A 'promise' is 'a manifestation of an intention to act or refrain from acting in a specified way, so made as to justify a promisee in understanding that a commitment has been made.'"  Am. Casual Dining, L.P. v. Moe's Sw. Grill, LLC, 426 F. Supp. 2d 1356, 1372 (N.D. Ga. 2006) (quoting F & W Agriservices, Inc. v. UAP/Ga. Ag. Chem., Inc., 549 S.E.2d 746, 749 (Ga. Ct. App. 2001)).  "Promissory estoppel does not apply to a promise that is vague, indefinite, or of uncertain duration."  Mariner Healthcare, Inc. v. Foster, 634 S.E.2d 162, 168 (Ga. Ct. App.

11

2006). "Whether a party made a promise in a given case is generally a question of fact for the jury." Hemispherx Biopharma, Inc. v. Mid-South Capital, Inc., 690 F.3d 1216, 1228 (11th Cir. 2012).

In Count 2 for the Second Amended Complaint, Plaintiff alleges, *inter alia*, that "[i]n a telephone call on or about July 14, 2014, Defendant's (sic) made a clear and definite promise to refrain from contracting directly with Plaintiff's customers for a period of a year after the termination of a subcontract relationship between Plaintiff and Stoneridge." Am. Compl. at ¶ 38. Contrary to Defendants' argument, this statement clearly identifies at least one promise that Plaintiff alleges Defendant Stoneridge made, and thus, it is plausible that discovery will lead to evidence supporting Plaintiff's claim.

Accordingly, the Court denies Defendants' motion to dismiss as to Plaintiff's promissory estoppel claim.

### iv. *Negligent Misrepresentation & Fraud (Counts 3 & 4)*

Defendants argue that Plaintiff fails to plead with particularity its fraud-based claims: fraud (count 4) and negligent misrepresentation (count 3). Defendants argue that each of these claims are subject to Rule 9(b)'s heightened pleading standards and that each one fails to provide the required level of specificity for fraud claims. Plaintiff does not dispute that Rule 9(b) applies but argues that it pled fraud with the requisite specificity required by Rule 9(b).

When a claim alleges fraud, Rule 9(b) of the Federal Rules of Civil Procedure requires a complaint to "state with particularity the circumstances constituting fraud." In American Dental Association v. Cigna Corporation, the Eleventh Circuit reiterated that, "pursuant to Rule 9(b), a plaintiff must allege: (1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the plaintiffs; and (4) what the defendants gained by the alleged fraud." 605 F.3d 1283, 1291 (11th Cir. 2010) (quoting Brooks v. Blue Cross & Blue Shield of Fla., Inc., 116 F.3d 1364, 1380-81 (11th Cir. 1997)) (internal quotation marks omitted).

When the Court granted Plaintiff's motion for leave to amend, the Court previously determined that Plaintiff's Second Amended Complaint sufficiently satisfied the Rule 9(b) particularity standard in the context of Defendants' futility arguments. [Doc. 54 at 8]. Notwithstanding the Court's previous Order, Plaintiff's Second Amended Complaint states that Defendants misrepresented that they agreed to refrain from contracting directly with Plaintiff's customers for a certain period, the dates of the alleged misrepresentations, how Plaintiff purportedly suffered from the alleged misrepresentations, and who was involved in the communications regarding the alleged misrepresentations. Am. Compl. at ¶¶ 14-16, 42-43, 46-47. Thus, Plaintiff sufficiently alleged the "who," "what," "when," "where," and "how."

Furthermore, at this stage, the Court cannot say that Plaintiff's fraud-based claims fail as a matter of law.

Accordingly, the Court denies Defendants' motion to dismiss as to Plaintiff's fraud and negligent misrepresentation claims.

### v. Tortious Interference (Count 5)

The Court previously determined that Georgia law applies to Plaintiff's tort claims [Doc. 54], and thus, Defendants argue that Plaintiff's tortious interference with economic advantage claim must fail as it is cognizable under Minnesota law but not Georgia law.  Alternatively, Defendants argue that even assuming Plaintiff intended to allege a cause of action for tortious interference with business relations, pursuant to Georgia law, the claim fails because Plaintiff cannot plead that (1) Defendants were "strangers" to the business relationship at issue and (2) Defendants' conduct proximately caused Plaintiff's purported damages.

As an initial matter, Plaintiff fails to acknowledge Defendants' argument regarding Plaintiff's claim not being cognizable pursuant to Georgia law and simply proceeded to argue the claim as it if were plead as a tortious interference with business relationship claim.  When an argument is raised that a claim is subject to dismissal, and the non-moving party fails to respond to such an argument, such claims are deemed abandoned.  See Holland v. Dep't of Health & Human Servs., 51 F. Supp. 3d 1357, 1376 (N.D. Ga. 2014) (finding the plaintiff abandoned claim for

14

punitive damages when the plaintiff failed to respond to the defendant's argument on motion to dismiss that claim was barred by sovereign immunity); White v. GA Dep't of Motor Vehicle Safety, No. 1:06-CV-0124-TWT, 2006 WL 1466254, at *1 (N.D. Ga. May 19, 2006) (finding claims abandoned where the plaintiff did not respond to the defendant's motion to dismiss); see also Coalition for the Abolition of Marijuana Prohibition v. City of Atlanta, 219 F.3d 1301, 1326 (11th Cir. 2000) (finding that a party's failure to brief and argue an issue before the district court is grounds for declaring it abandoned); A1 Procurement, LLC v. Hendry Corp., No. 11-23582-CIV, 2012 WL 6214546, at *3 (S.D. Fla. Dec. 13, 2012) (dismissing claims as abandoned where the plaintiff failed to respond to the defendants' arguments concerning the dismissal of those claims); Hooper v. City of Montgomery, 482 F. Supp. 2d 1330, 1334 (M.D. Ala. 2007) (same); Hudson v. Norfolk S. Ry. Co., 209 F. Supp. 2d 1301, 1324 (N.D. Ga. 2001) (finding that "[w]hen a party fails to respond to an argument or otherwise address a claim, the Court deems such argument or claim abandoned").

Accordingly, this argument is unopposed and the Court grants Defendants' motion to dismiss Plaintiff's Second Amended Complaint as to its tortious interference with economic advantage claim.

Nevertheless, even assuming Plaintiff plead a tortious interference with business relationship claim, this claim is due for dismissal, pursuant to Rule

12(b)(6).   Plaintiff alleges that Defendants interfered with it receiving the full amount of the APi Group Project proceeds because Defendants began communicating with APi Group about replacing Plaintiff in the APi Group Project. See generally Am. Compl. at ¶¶ 50-51.

> [T]o recover under a theory of tortious interference with business relations, a plaintiff must show that the defendant (1) acted improperly and without privilege; (2) acted purposely and with malice with the intent to injure; (3) induced a third party or parties not to enter into or continue a business relationship with the plaintiff; and (4) caused the plaintiff financial injury.

Britt Paulk Ins. Agency, Inc. v. Vandroff Ins. Agency, Inc, 952 F. Supp. 1575, 1581 (N.D. Ga. 1996), aff'd sub nom. 137 F.3d 1356 (11th Cir. 1998).   Additionally, "the defendant [must] be both a stranger to the business relationship giving rise to and underpinning the contract." Ne. Ga. Cancer Care, LLC v. Blue Cross & Blue Shield of Ga., Inc., 676 S.E.2d 428, 433 (Ga. Ct. App. 2009).   "Thus, all parties to an interwoven contractual arrangement are not liable for tortious interference with any of the contracts or business relationships." Id. (quoting Pruitt Corp. v. Strahley, 510 S.E.2d 821 (Ga. 1999) (citations and punctuation omitted)).

Here, for Plaintiff's tortious interference claim to survive, Defendants must be considered "strangers" to Plaintiff's business relationship with APi Group. Georgia courts have held that a defendant is not a "stranger" to a business relationship when:

16

(1) the defendant is an essential entity to the purported injured relations; (2) the alleged injured relations are inextricably a part of or dependent upon the defendant's business relations; (3) the defendant would benefit economically from the alleged injured relations; or (4) both the defendant and the plaintiff are parties to a comprehensive interwoven set of contracts or relations.

Britt Paulk Ins. Agency, Inc., 952 F. Supp. at 1584.  Importantly, "[o]ne is not a stranger to the contract just because he is not a party to the contract."  LaSonde v. Chase Mortg. Co., 577 S.E.2d 822, 824 (Ga. Ct. App. 2003).  The stranger doctrine exclusion "cover[s] those who benefit from the contract of others, without regard to whether the beneficiary was intended by the contracting parties to be a third-party beneficiary."  Atlanta Market Ctr. Mgmt., Co. v. McLane, 503 S.E.2d 278, 283 (Ga. 1998).  If a defendant has "a legitimate interest in either the contract or a party to the contract, the defendant is not a stranger to the contract."  Disaster Servs., Inc. v. ERC P'ship, 492 S.E.2d 526, 529 (Ga. Ct. App. 1997).

Here, Plaintiff alleges that it contracted with Defendants "to provide subcontracting services on the APi Group Project."  Am. Compl. at ¶ 10.  Thus, Defendants clearly had a legitimate interest in the contract and relationship between Plaintiff and APi Group and Defendants benefited from the contract and relationship between Plaintiff and APi Group.  See Atlanta Market Ctr Mgmt, Co., 503 S.E.2d at 283; see also Lee v. Caterpillar Inc., No. 1:11-CV-2130-WSD, 2011 WL 13176333, at *5 (N.D. Ga. Dec. 2, 2011), aff'd, 496 F. App'x 914 (11th Cir. 2012).  Because Defendants are not strangers to the contracts and relationships at issue, Plaintiff

cannot maintain its claim for tortious interference.[3]   Accordingly, the Court grants Defendants' motion to dismiss as to Plaintiff's tortious interference claim.

## III.   Conclusion

For the foregoing reasons, the Court **GRANTS** Defendants' Motion to File Confidential Document Under Seal [Doc. 62] and **GRANTS IN PART AND DENIES IN PART** Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint [Doc. 58].   Specifically, the Court **GRANTS** Defendants' motion to dismiss as to Plaintiff's tortious interference claim and **DISMISSES WITH PREJUDICE** this claim, and **DENIES** Defendants' motion to dismiss as to Plaintiff's remaining claims.

**SO ORDERED**, this __5th__ day of February, 2019.

Eleanor L. Ross
United States District Judge
Northern District of Georgia

---

[3] Because Plaintiff's claim fails due to the stranger doctrine, the Court need not address Defendants' additional argument that Plaintiff failed to adequately plead the causation element of tortious interference.