**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| SIS, LLC,<br><br>    Plaintiff,<br><br>                v.<br><br>STONERIDGE HOLDINGS, INC., ERIC NEWELL, and SCOTT BOEDIGHEIMER,<br><br>    Defendants. | Civil Action No.<br>1:17-cv-01816-SDG |

**OPINION AND ORDER**

This matter is before the Court on Defendants Stoneridge Holdings, Inc., Eric Newell, and Scott Boedigheimer's (collectively, Stoneridge) motion to exclude Plaintiff SIS, LLC's (SIS) expert James Bowman [ECF 167]. After careful consideration of the parties' briefing, the Court **DENIES** Defendants' motion.

**I.     BACKGROUND**

SIS and Stoneridge both provide services related to implementing largescale, customized Microsoft software packages for businesses. SIS alleges that Stoneridge used SIS's trade secrets, that it learned by working as a subcontractor for SIS, to take over a service contract with APi Group, Inc. (APi).

SIS seeks disgorgement and unjust enrichment damages for breach of a written confidentiality agreement and misappropriation of trade secrets.[1]

To support its claims for damages, SIS retained James Bowman as an expert witness.[2] Stoneridge moves to exclude Bowman's testimony on the grounds that (1) he is unqualified;[3] (2) he used an unreliable methodology to support his conclusions;[4] and (3) his testimony will not be helpful to the trier of fact.[5] SIS filed an opposition to Stoneridge's motion and a declaration from Bowman clarifying his qualifications and his methodology.[6] Stoneridge replied, arguing that Bowman's declaration is untimely and improper.[7]

---

[1] SIS also claimed lost profit damages based on allegations that Stoneridge breached an oral subcontract agreement, but has moved to amend its Complaint to abandon this claim and notified the Court that it will not pursue lost profit damages, intellectual property damages, or royalty damages. ECF 194; ECF 199. Accordingly, the Court limits its inquiry to Bowman's testimony on unjust enrichment damages.

[2] ECF 167-1, at 2.

[3] *Id.* at 11–14.

[4] *Id.* at 14–21.

[5] *Id.* at 21–23.

[6] ECF 183; ECF 183-2.

[7] ECF 184.

## II.     LEGAL STANDARD

Federal Rule of Evidence 702 governs the admissibility of expert witness evidence and provides that:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

"[T]he rejection of expert testimony is the exception rather than the rule." Fed. R. Evid. 702 advisory committee's note to 2000 amendment.

"As explained by the Supreme Court, the purpose of the expert admissibility rules is to enlist the federal courts as 'gatekeepers' tasked with screening out 'speculative' and 'unreliable expert testimony.'" *Moore v. Intuitive Surgical, Inc.*, 995 F.3d 839, 850 (11th Cir. 2021) (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993) and *Kilpatrick v. Breg, Inc.*, 613 F.3d 1329, 1335 (11th Cir. 2010)). In this role, however, "courts must remain chary not to improperly use the admissibility criteria to supplant a plaintiff's right to a jury

trial: 'Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.'" *Id.* (quoting *Daubert*, 509 U.S. at 596).

Courts in this circuit consider three factors on a *Daubert* challenge:

(1) whether the expert witness is qualified to testify competently regarding the matters he intends to address;

(2) whether the methodology by which the expert witness reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and

(3) whether the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

*Id.* at 850–851 (citing *City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 562 (11th Cir. 1998)). Though "there is inevitably some overlap among the basic requirements—qualification, reliability, and helpfulness—they remain distinct concepts and the courts must take care not to conflate them." *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004).

### III.   DISCUSSION

Stoneridge challenges Bowman's testimony on all three prongs of the Court's inquiry, claiming that Bowman is unqualified, he used an unreliable

methodology, and his testimony will be unhelpful to a trier of fact. Additionally, Stoneridge argues that SIS's failure to timely disclose the underlying basis for Bowman's methodologies is grounds for exclusion of his expert witness testimony.

### A.    Bowman's Qualifications

Stoneridge challenges Bowman's qualifications, arguing that he has not received any specialized training in calculating damages, has never served as an expert witness, and bases his opinion on his own personal experience and scant evidence. Essentially, Stoneridge takes issue with Bowman applying his industry knowledge to the facts given to him without explaining in detail why his industry knowledge led him to his conclusions.

Stoneridge improperly conflates the first and second *Daubert* inquiries. Whether it is improper for Bowman to testify "simply based on his experience" is a question of methodology, not of qualification.

> Qualifications and reliability remain separate prongs of the *Daubert* inquiry that answer two separate questions. A witness is qualified as an expert if he is the type of person who should be testifying on the matter at hand. An expert opinion is reliable if it was arrived at through, among other things, a scientifically valid methodology.

*Moore*, 995 F.3d at 852. Stoneridge spends the bulk of its qualifications argument critiquing how Bowman prepared his opinion, but whether he consulted treatises

or engaged in peer review in coming to his conclusions does not resolve whether he "is the type of person who should be testifying on the matter at hand." *Id.*

The Court concludes that Bowman is qualified to serve as an expert witness concerning damages in this case. Bowman has nearly thirty years of experience in the niche industry in which SIS and Stoneridge work, has held executive level positions, is a member of prestigious organizations comprised of Microsoft software sales partners, and has successfully valued companies that offer services related to Microsoft software packages for mergers and acquisitions.[8] A witness can be qualified to testify as an expert based on his or her "knowledge, skill, ***experience***, training, or education." Fed. R. Evid. 702 (emphasis added). Bowman's experience in the Microsoft software industry qualifies him as an expert witness on the alleged damages to SIS.

### B.   Bowman's Methodologies

"Of course, the unremarkable observation that an expert may be qualified by experience does not mean that experience, standing alone, is a sufficient foundation rendering reliable *any* conceivable opinion the expert may express." *Frazier*, 387 F.3d at 1261 (emphasis in original). This is the heart of Stoneridge's

---

[8]   ECF 183, at 4–6; ECF 167-3 at 11–12.

challenge—that Bowman relied only on his experience in coming to his conclusion and this, alone, is insufficient to make his conclusions reliable. In other words, Stoneridge argues that Bowman's testimony amounts to an improper "take my word for it" analysis.[9]

SIS counters that Bowman used an "incremental approach" to project the revenue and profit SIS allegedly lost because Stoneridge took over the APi project. According to SIS, Bowman totaled the invoices sent from Stoneridge to APi and then deducted the costs associated with the revenue.[10] Though this methodology was primarily utilized to calculate SIS's alleged lost profit damages relating to its breach of contract claim, it also forms the basis for Bowman's anticipated testimony on unjust enrichment damages. Along with its response, SIS submitted a declaration from Bowman explaining this analysis.[11] Stoneridge argues that this declaration is an improper attempt to file expert disclosures after the expert disclosure deadline.

Stonebridge is correct that the admissibility of expert witness evidence cannot be established merely by the *ipse dixit* of a qualified expert. *Frazier*, 387

---

[9] ECF 167-1, at 10.

[10] ECF 183, at 9.

[11] ECF 183-2.

F.3d at 1261. An expert's testimony "must be supported by appropriate validation—*i.e.*, 'good grounds,' based on what is known." *Daubert*, 509 U.S. at 590. "When evaluating the reliability of scientific expert opinions, the trial judge must assess 'whether the reasoning or methodology underlying the testimony is scientifically valid and . . . whether that reasoning or methodology properly can be applied to the facts in issue.'" *Frazier*, 387 F.3d at 1261–62 (quoting *Daubert*, 509 U.S. at 592–93). "The same criteria that are used to assess the reliability of a scientific opinion may be used to evaluate the reliability of non-scientific, experience-based testimony." *Id.* at 1262. However, the Court has "considerable leeway" in deciding how to test the reliability of expert witness evidence. *Id.* (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999)). "Exactly *how* reliability is evaluated may vary from case to case, but what remains constant is the requirement that the trial judge evaluate the reliability of the testimony before allowing its admission at trial." *Id.*

In his first report, Bowman stated that he relied on industry surveys and his own experience to determine that the gross margin on the project for APi would likely be 38.69%.[12] Based on his calculation from Stoneridge's invoices to

---

12   ECF 167-3, at 2.

APi that its revenue was $14,352,109, he calculated the gross net profit to be $5,553,601.[13] This, in turn, formed the basis for Bowman's opinion that Stoneridge was unjustly enriched in the amount of $5,553,601.[14] After learning that subscription fees were actually paid to SIS before it exited the project, Bowman supplemented his report to increase the blended gross profit margin to 39.1% because "the software margin became a smaller percentage of the overall revenue mix," and increased the total lost gross net profit by which Stoneridge was unjustly enriched to $5,623,112.[15]

Bowman's latest declaration, filed along with SIS's response in opposition to Stoneridge's motion, further explains his methodology.[16] Though the Court finds the declaration helpful and properly considered, even in its absence the Court would find Bowman's methodology reliable. Bowman's methodology was to calculate a gross profit margin, which included a blended rate that he determined from his industry experience in working on projects of comparable size, and to apply that rate to the revenue that Stoneridge itself had calculated.

---

[13]  *Id.* at 2, 8.

[14]  *Id.* at 9.

[15]  ECF 167-6.

[16]  ECF 183-2, ¶¶ 8–13.

While not exactly a model of clarity, Bowman's opinion is not the *ipse dixit* expert witness testimony that Stoneridge makes it out to be. Bowman adequately validates his methodology and reliably applies it to the facts of this case. *Frazier*, 387 F.3d at 1261.

### C. Whether Bowman's Testimony Will Assist a Trier of Fact

"The final requirement for admissibility of expert testimony under Rule 702 is that it assist the trier of fact. By this requirement, expert testimony is admissible if it concerns matters that are beyond the understanding of the average lay person." *Frazier*, 387 F.3d at 1262. Expert witness testimony is not helpful to the trier of fact, "when it offers nothing more than what lawyers for the parties can argue in closing arguments." *Id.* at 1262–63. "Simply put, expert testimony may be assigned talismanic significance in the eyes of lay jurors, and, therefore, the district courts must take care to weigh the value of such evidence against its potential to mislead or confuse." *Id.* at 1263.

Stoneridge argues that Bowman's opinion will not assist the trier of fact in determining damages because his opinion is not based on any reliable methodology. Again, Stoneridge conflates the prongs of the *Daubert* analysis. Certainly, unreliable expert witness testimony should be excluded because of the risk that a trier of fact will place undue significance on it, but this is the purpose

of the reliability prong. The Court has already determined that Bowman's methodology is sufficiently reliable.

The question for the Court in this final analysis is whether Bowman's valuation of the gross profit on the APi project, by which SIS alleges Stoneridge was unjustly enriched, offers something beyond what the average trier of fact would understand. The Court finds that it does. It is disingenuous for Stoneridge to argue that SIS's attorneys can propose the same theory of damages in closing argument when, in the first pages of its brief, it admits that Bowman was hired to "close the gap" and establish SIS's alleged damages. SIS's attorneys cannot effectively argue this point in closing argument without pointing to evidence that was admitted during trial. Bowman's testimony will aid the jury in determining the amount of unjust enrichment damages SIS is entitled to, if any.

### IV. CONCLUSION

The Court **DENIES** Defendants' motion to exclude James Bowman as an expert witness [ECF 167].

**SO ORDERED** this the 28th day of May 2021.

_____
Steven D. Grimberg
United States District Court Judge