IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

SIS, LLC,

     Plaintiff,

              v.

STONERIDGE HOLDINGS, INC., ERIC
NEWELL, and SCOTT BOEDIGHEIMER,

     Defendants.

Civil Action No.
1:17-cv-01816-SDG

## OPINION AND ORDER

This matter is before the Court, by consent of the parties, on Plaintiff SIS,

LLC's motion for attorneys' fees and expenses [ECF 239]. Also before the Court

are Defendants' motions for judgment as a matter of law or, in the alternative,

remittitur [ECF 241], and for sanctions [ECF 242], and Defendant Stoneridge

Holdings, Inc.'s (Stoneridge) objection to SIS's bill of costs [ECF 244]. After careful

review of the parties' briefing, and in consideration of the evidence presented at

trial, the Court **SUSTAINS** Stoneridge's objection to SIS's bill of costs and

**DENIES** the remaining motions.

## I.   BACKGROUND

Both SIS and Stoneridge provide services related to the sale and

implementation of large scale and often business-wide Microsoft software

packages. Stoneridge also provides training services related to these Microsoft

software packages.[1] In early 2014, SIS engaged in discussions with Stoneridge regarding an anticipated Microsoft software package implementation project with APi Group Inc. (APi), and the parties began negotiating a subcontract agreement.[2] To facilitate negotiations, SIS and Stoneridge entered into a mutual confidentiality agreement (the MCA), which prohibited a party receiving confidential information from accessing, reproducing, disclosing, or using that information unrelated to the business relationship between the parties.[3]

Though drafts of a subcontract agreement were exchanged between SIS and Stoneridge, a final subcontract agreement was never signed by both parties.[4] Stoneridge did not agree with SIS's final estimated hours of work for Stoneridge employees, which was considerably less than that to which Stoneridge had originally agreed.[5] Stoneridge did not respond to SIS's final proposed contract,

---

[1]   ECF 249-2, Trial Tr. at 78:1–23.

[2]   ECF 249, Trial Tr. at 165:21–25; 166:1–25.

[3]   Pl. Trial Ex. 7.

[4]   ECF 249, Trial Tr. at 258:1–17.

[5]   *Id.* at 258:19–25; 249:1–2; Pl. Trial Ex. 32.

sent on June 12, 2014,[6] and informed SIS that it no longer intended to go forward with the subcontract on August 4, 2014.[7]

APi was ultimately dissatisfied with SIS's performance and decided to end its engagement with SIS after the first phase of the project, which it was contractually permitted to do.[8] Based on a positive experience with Stoneridge's training services, APi communicated to Stoneridge that it was interested in having it take over the project.[9]  On January 14, 2015, a day before a meeting with APi, Scott Boedigheimer, Stoneridge's then-current Vice President, forwarded two emails to Eric Newell, President of Stoneridge, and another Stoneridge employee, one containing an organizational chart outlining SIS's "implementation plan" for the APi project[10] and one listing some of SIS's proposed prices for the APi implementation.[11] APi ultimately hired Stoneridge to take over the project.[12]

---

[6]   Pl. Trial Ex. 13.

[7]   Pl. Trial Ex. 32.

[8]   ECF 258, Trial Tr. at 986:2–21,1064:20–24.

[9]   ECF 249, Trial Tr. at 218:16–24; ECF 258, Trial Tr. at 984:16–23.

[10]   Pl. Trial Ex. 43.

[11]   Pl. Trial Ex. 57.

[12]   ECF 258, Trial Tr. at 1094:6–25, 1095:1–20.

SIS filed its first Complaint on May 19, 2017, alleging breach of the subcontract agreement.[13] SIS first amended its Complaint to add alternative claims,[14] and amended it a second time to include an allegation that, in the event the subcontract agreement is unenforceable, Stoneridge breached the MCA, as well as to add a claim for misappropriation of trade secrets.[15] On May 20, 2021, four years after initiating this suit, after the Court ruled on Stoneridge's motion for summary judgment, and after the parties had filed all pre-trial motions, SIS again moved to amend its Complaint, this time to abandon its claim for breach of the subcontract.[16] The Court permitted amendment, but only to allow SIS to remove allegations related to the subcontract agreement.[17]

After an eight-day trial, the jury returned a verdict in favor of SIS on its breach of contract claim related to the MCA, against SIS on its misappropriation of trade secrets claim, and in favor of Stoneridge on its counterclaim for services

---

[13]   ECF 1.

[14]   ECF 24.

[15]   ECF 55.

[16]   ECF 199.

[17]   ECF 212 (Third Amended Complaint); ECF 213.

provided.[18] The jury awarded $85,000 in nominal damages to SIS and $1,700.68 in damages to Stoneridge.[19]

The parties agreed to submit the determination of appropriateness and amount of attorneys' fees to the Court.[20] Accordingly, SIS moved for attorneys' fees pursuant to O.C.G.A. § 13-6-11.[21] Stoneridge responded in opposition to SIS's motion for fees,[22] to which SIS replied.[23] SIS also filed a bill of costs as the prevailing party,[24] to which Stoneridge objects.[25] Stoneridge filed two post-trial motions, one for judgment as a matter of law or, in the alternative, remittitur,[26] and one for Rule 11 sanctions.[27] These motions are fully briefed.[28]

---

[18]   ECF 232.

[19]   *Id.*

[20]   ECF 259, Trial Tr. at 1172:25, 1173:1–25, 1174:1–25, 1175:1–11.

[21]   ECF 239.

[22]   ECF 248.

[23]   ECF 252.

[24]   ECF 240.

[25]   ECF 244.

[26]   ECF 241.

[27]   ECF 242.

[28]   ECF 246 (SIS's response in opposition to Stoneridge's motion for sanctions); ECF 247 (SIS's response in opposition to Stoneridge's motion for judgment as a matter of law or remittitur); ECF 253 (Stoneridge's reply in support of its

## II.     SIS'S MOTION FOR ATTORNEYS' FEES AND EXPENSES

SIS moves for attorneys' fees pursuant to O.C.G.A. § 13-6-11 on the ground that Stoneridge acted in bad faith and was stubbornly litigious with respect to its claim that Stoneridge breached the MCA. SIS seeks $615,935.03 in attorneys' fees and other expenses.[29] SIS also requests $33,750 for achieving a final judgment before this Court.[30] Stoneridge responds that it could not, as a matter of law, have acted in bad faith or been stubbornly litigious and,[31] even if it did, SIS's attorneys' fees award must be limited to the fees accrued only in furtherance of its MCA claim.[32]

### A.     LEGAL STANDARD

Pursuant to O.C.G.A. § 13-6-11, a finder of fact may award attorneys' fees "where the plaintiff has specially pleaded and has made prayer therefor and where the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense." Recovery of attorneys' fees

---

motion for sanctions); ECF 254 (Stoneridge's reply in support of its motion for judgment as a matter of law or remittitur).

[29]   ECF 239, at 14.

[30]   *Id.* SIS also initially sought preemptive fees for anticipated appellate litigation but has since withdrawn that request. ECF 252, at 8.

[31]   ECF 248, at 7–13.

[32]   *Id.* at 13–18.

and expenses under O.C.G.A. § 13-6-11 is limited to those "attributable solely to the claims on which [the plaintiff] prevailed." *Roberts v. JP Morgan Chase Bank, Nat'l Ass'n*, 342 Ga. App. 73, 80 (2017). Further, "[t]he elements which will authorize an award under OCGA § 13–6–11," bad faith, stubborn litigiousness, or unnecessary trouble, must "relate to the conduct arising from the transaction underlying the cause of action being litigated, not conduct during the course of the litigation itself." *David G. Brown, P.E., Inc. v. Kent*, 274 Ga. 849, 850 (2002).

### B.     DISCUSSION

SIS prevailed at trial on its claim against Stoneridge for breach of the MCA, and so it may recover attorneys' fees if it can show that Stoneridge acted in bad faith or was stubbornly litigious with respect to the MCA claim. After carefully observing the trial, reviewing the trial record and evidence, and with the benefit of the parties' briefing, the Court finds that Stoneridge neither acted in bad faith nor was stubbornly litigious with respect to the MCA claim. Accordingly, SIS is not entitled to attorneys' fees under O.C.G.A. § 13-6-11.

#### i.     Bad Faith

SIS argues that Stoneridge acted in bad faith in breaching the MCA because it used SIS's confidential information to its advantage in taking over the project with APi. In support, it cites to the two emails Boedigheimer forwarded to Newell

and another Stoneridge employee prior to Stoneridge's pitch meeting with APi.[33] In the body of one of the forwarded emails, which reflected the pricing information for SIS's implementation, a Microsoft employee requested that Stoneridge keep the document private because Max Thomas, an SIS representative, was "secretive and sensitive" about the exchange of information.[34]

To find bad faith that would support an award of attorneys' fees, the offensive conduct must have been "more than bad judgment or negligence." *Powell Co. v. McGarey Grp., LLC*, 508 F. Supp. 2d 1202, 1219 (N.D. Ga. 2007). There must be "a dishonest purpose or some moral obliquity and implies conscious doing of wrong and a breach of known duty through some motive of interest of ill will." *Id.* (cleaned up). The fact that a party breached a contract, without more, is insufficient to support a finding of bad faith. *Pulte Home Corp. v. Woodland Nursery & Landscapes, Inc.*, 230 Ga. App. 455, 457 (1998).

Though the timing of the emails sent by Boedigheimer could evidence bad faith, the Court is persuaded by the credible testimony of Newell and Neil Ammentorp, a former APi employee, who testified that most, if not all, of the information in the emails was either information provided by Stoneridge to SIS,

---

[33]   Pl. Trial Ex. 43; Pl. Trial Ex. 57.

[34]   Pl. Trial Ex. 43.

constituted public information, or had little to no competitive value.[35] At most, the emails reflect poor judgment on Boedigheimer's part because he could have gathered the same or similar information through appropriate means rather than relying on SIS's work product.

SIS also failed to show that there was some ill motive in acquiring the confidential information. The evidence shows that, at the time SIS and Stoneridge were negotiating the subcontract, Stoneridge was invested in the APi project's success and worked with SIS to perfect its pitch to APi.[36] The purpose of one of the emails was to ensure the pricing SIS presented to Microsoft was accurate.[37] The second email was sent from Max Thomas during the subcontract negotiations, presumably to demonstrate the team working on the implementation.[38] Moreover, as SIS's own expert testified, takeovers are common in this niche industry,[39] and so the fact that Stoneridge was able to take over for SIS after APi decided to hire another implementation partner is neither unusual nor unfair. In the absence of a

---

[35]  ECF 249, Trial Tr. at 241:7–13, 313:2–6; ECF 258, Trial Tr. 1049:12–15, 1052:20–25, 1053:1–11, 17–25, 1054:1.

[36]  ECF 249-2, Trial Tr. at 230–38; Def. Trial Ex. 2; Def. Trial Ex. 25.

[37]  Pl. Trial Ex. 43.

[38]  Pl. Trial Ex. 57.

[39]  ECF 256, Trial Tr. at 577:14–25, 578:1–8, 580:1–8.

valid subcontract agreement, Stoneridge was free to compete with SIS even though it had helped SIS prepare for the implementation. SIS has not shown that Stoneridge breached the MCA in bad faith.

### ii.   Stubborn Litigiousness

SIS argues that it is also entitled to attorneys' fees under O.C.G.A. § 13-6-11 because Stoneridge was stubbornly litigious with respect to the MCA claim. Stoneridge responds that it could not, as a matter of law, have been stubbornly litigious regarding its breach of the MCA because SIS did not pursue the claim until late in litigation.[40]

"[S]tubborn litigiousness and causing the plaintiff unnecessary trouble and expense refer to a defendant's forcing of the plaintiff to sue where no bona fide controversy exists." *McElroy v. Courtney Ajinca Events LLC*, 512 F. Supp. 3d 1328, 1341 (N.D. Ga. 2021) (quoting *Jeff Goolsby Homes Corp. v. Smith*, 168 Ga. App. 218, 221 (1983)). Though "evidence created after a lawsuit's filing may be relevant to whether a bona fide controversy existed," that evidence must relate to "conduct arising from the transaction underlying the cause of action, not conduct during the

---

[40]   ECF 248, at 7–10.

course of litigation itself." *Caradigm USA LLC v. PruittHealth, Inc.*, 964 F.3d 1259, 1282 (11th Cir. 2020) (quoting *David G. Brown, P.E., Inc.*, 274 Ga. at 850 (2002)).

Stoneridge's argument raises an interesting question of whether a claim asserted for the first time after litigation begins can support a finding of stubborn litigiousness. Though SIS first raised its MCA claim in its Second Amended Complaint, it did so in the alternative to its claim that Stoneridge breached the subcontract agreement.[41] SIS decided to abandon its breach of the subcontract agreement claim and pursue its MCA claim a month before trial began.[42] Up until this point, SIS's position was that the MCA was only valid if the subcontract agreement was not.[43]

The Court need not reach the timing issue because SIS cannot credibly argue that no bona fide dispute existed as to the validity of the MCA when ***SIS itself*** questioned the validity of the MCA for almost the entirety of this litigation. Moreover, at trial, Stoneridge reasonably disputed the scope of the MCA, whether it was applicable to Boedigheimer's emails, and the timing of when the MCA became effective. SIS has not shown that Stoneridge was stubbornly litigious.

---

[41]   ECF 55, ¶ 33.

[42]   ECF 212.

[43]   ECF 55, ¶ 32.

Accordingly, SIS's motion for attorneys' fees pursuant to O.C.G.A. § 13-6-11 is denied.

## III. DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW OR, IN THE ALTERNATIVE, FOR REMITTITUR

At trial, SIS's sole breach of contract claim related to the MCA. SIS did not present any evidence of actual damages, instead relying on a liquidated damages provision in the MCA that purportedly allowed SIS to recover "all forms of compensation or benefits which [Stoneridge] directly or indirectly realizes as a result of such breach."[44] Because this provision did not employ a reasonable method for estimating probable loss, the Court held that it constituted an unenforceable liquidated damages provision.[45] Absent evidence of actual loss or an enforceable liquidated damages provision, SIS's recovery was limited to nominal damages. O.C.G.A. § 13-6-6. The jury found in favor of SIS on its claim that Stoneridge breached the MCA and awarded SIS $85,000 in nominal damages.[46] Defendants now move for judgment as a matter of law or, in the alternative, for remittitur, arguing that the nominal damages awarded to SIS

---

[44]   Pl. Trial Ex. 7, ¶ 5.

[45]   ECF 250-1, Trial Tr. at 531–33.

[46]   ECF 231.

exceeds the amount "sufficient to cover the costs of bringing the action" under O.C.G.A. § 13-6-6.

"In general, a remittitur order reducing a jury's award to the outer limit of the proof is the appropriate remedy where the jury's damage award exceeds the amount established by the evidence." *Goldstein v. Manhattan Indus., Inc.*, 758 F.2d 1435, 1448 (11th Cir. 1985). The Court's authority to order remittitur is grounded in its authority to grant a new trial. *Johansen v. Combustion Eng'g, Inc.*, 170 F.3d 1320, 1328 (11th Cir. 1999). Where, as here, a party disputes the jury award because it is excessive, the Court may either reduce the amount of damages to the maximum amount proved by the evidence or order a new trial. *Goldstein*, 758 F.2d at 1447–48. The Court may not, however, "substitute [its] own judgment for that of the jury." *Lipphardt v. Durango Steakhouse of Brandon, Inc.*, 267 F.3d 1183, 1186 (11th Cir. 2001).

Stoneridge contends that the jury was confused as to the definition of nominal damages and, as a result, awarded more than permissible under O.C.G.A. § 13-6-6. Stoneridge argues that O.C.G.A. § 13-6-6 permits recovery of "[nominal]

damages sufficient to cover the costs of bringing the action," and, therefore, SIS is limited to the $400 it incurred in filing fees.[47]

Damages "sufficient to cover the costs of bringing the action," is not defined, but Georgia courts have elaborated that an award of damages under O.C.G.A. § 13-6-6 is not meant to compensate the injured party, but to "prevent his being mulcted in the costs after he has established his cause of action." *Fowler's Holdings, LLLP v. CLP Fam. Invs., L.P.*, 318 Ga. App. 73, 74 (2012) (quoting *Foote & Davies Co. v. Malony*, 115 Ga. 985, 988(4) (1902)). A common descriptor of nominal damages is "a trivial sum." *Brock v. King*, 279 Ga. App. 335, 343 (2006).

> However, in Georgia, the term "nominal damages" is purely relative, and carries with it no suggestion of certainty as to amount. Instead of being restricted to a very small amount, the sum awarded as nominal damages may, according to circumstances, vary almost indefinitely. In some cases a very small amount might constitute the trivial sum contemplated by the term "nominal damages"; in others a much larger amount might measure down to the same standard of triviality. And even though a verdict for nominal damages may be apparently large in its amount, it cannot be set aside simply because the amount is large, absent evidence of prejudice or bias in any incident at trial or a mistake on the part of the jury.

---

[47] ECF 241-1, at 9.

*Wright v. Wilcox*, 262 Ga. App. 659, 662 (2003) (cleaned up) (citing *First Fed. Sav. & Assn. v. White*, 168 Ga. App. 516–17 (1983), *Sellers v. Mann*, 113 Ga. 643, 644 (1901), and *Atl. Coast Line R. Co. v. Stephens*, 14 Ga. App. 173, 174 (1914)).

In charging the jury, the Court instructed that "[n]ominal damages are generally defined as a trivial sum . . .  [i]t is intended as a vindication of the right of the party who brings an action upon good cause, but it is not intended to compensate the party for the breach of the contract."[48] And, when the jury later submitted a question asking what a reasonable "trivial sum" is for purposes of a nominal damages award, the Court answered that it was for the jury to decide.[49]

Stoneridge cites the jury's question as evidence that it was confused and argues that this confusion caused the jury to mistakenly award an amount above what would cover the costs of bringing the action.[50]  The Court disagrees. There is no evidence that the jury did not follow the Court's instructions. If anything, the question posed by the jury reflects an understanding of the purpose of nominal damages but an effort to seek clarity on the jury instruction's reference to a "trivial sum." Given the state of the law in Georgia on nominal damages, what a

---

[48]   ECF 259, Trial Tr. 1294:15–20.

[49]   ECF 231-1, at 2.

[50]   ECF 241-1, at 7–8.

reasonable amount of nominal damages can be depends on the circumstances of the case and is up to the jury to decide.

Though the Eleventh Circuit has stated that nominal damages are "ordinarily" $1 or $100, *Quainoo v. City of Huntsville, Alabama,* 611 F. App'x 953, 955 (11th Cir. 2015), it has not limited nominal damages awards to these amounts. Stoneridge relies primarily on *XTec, Inc. v. Hembree Consulting Services, Inc.*, 183 F. Supp. 3d 1245, 1271–72 (S.D. Fla. 2016), in which the Southern District of Florida reduced the nominal damages award in that case from $250,000 to $1. Notably, however, the court distinguished the applicable Florida law from the "flexible definition for 'nominal damages' applicable only in Georgia." *Id.* at 1272. Under Georgia's "flexible definition," courts have approved nominal damages awards of up to at least $625,000. *MTW Inv. Co. v. Alcovy Props., Inc.*, 273 Ga. App. 830, 832 (2005) (without evidence of prejudice, bias, or mistake, court would not set aside nominal damages award on the grounds that it was excessive). *See also Wright*, 262 Ga. App. at 662 (award of $22,000 in nominal damages was not excessive as a matter of law).

Stoneridge narrowly reads O.C.G.A. § 13-6-6 to set the ceiling of nominal damages as the cost to file the action, which in this case was $400, and argues that

any amount awarded over $400 is contrary to law and the evidence.[51] The Court does not read the statute so narrowly. O.C.G.A. § 13-6-6 does not define "costs" as filing fees, and the law does not support this definition. If this were true, then the proper instruction to the jury would have been to explicitly tell them that any nominal damages award in this case should not exceed $400. This runs counter to the "flexible definition" of nominal damages under Georgia law.

The Court declines to disturb the jury's verdict to set aside the $85,000 nominal damages award.

## IV.   DEFENDANTS' MOTION FOR RULE 11 SANCTIONS

Defendants move for sanctions under Federal Rule of Civil Procedure 11 and request $732,177.99 in attorneys' fees.[52] Defendants argue that SIS engaged in sanctionable conduct by frivolously litigating its claim for breach of the subcontract agreement for four years only to abandon the claim a month before trial.[53] SIS responds that its breach of the subcontract claim was neither frivolous nor improper and that Rule 11 sanctions cannot be imposed because the breach of the subcontract claim survived summary judgment. The Court agrees with SIS.

---

[51]   ECF 241-1, at 8.

[52]   ECF 242.

[53]   ECF 242-1, at 3.

Under Eleventh Circuit precedent, three types of conduct can justify the imposition of Rule 11 sanctions:

> (1) when a party files a pleading that has no reasonable factual basis; (2) when the party files a pleading that is based on a legal theory that has no reasonable chance of success and that cannot be advanced as a reasonable argument to change existing law; and (3) when the party files a pleading in bad faith for an improper purpose.

*Didie v. Howes*, 988 F.2d 1097, 1104 (11th Cir. 1993) (quoting *Pelletier v. Zweifel*, 921 F.2d 1465, 1514 (11th Cir. 1991)).

SIS had a factual basis for its claim that Stoneridge breached the subcontract agreement, its theory was reasonable, and there is no evidence it pursued this claim for an improper purpose. Though there is no "bright-line rule" that a claim that survives summary judgment cannot be the basis for a Rule 11 sanction, the fact that a claim survived summary judgment is strong evidence that it has a reasonable factual basis and is based on a reasonable legal theory. Fed R. Civ. P. 11(b) & (C) advisory committee's note to the 1993 amendment ("[I]f a party has evidence with respect to a contention that would suffice to defeat a motion for summary judgment based thereon, it would have sufficient 'evidentiary support' for purposes of Rule 11."). *See Manhattan Const. Co. v. Place Props. LP*, 559 F. App'x 856, 858 (11th Cir. 2014) (affirming denial of Rule 11 sanctions where sole claim survived summary judgment).

Stoneridge's motion for sanctions reads like a motion for reconsideration that disputes the Court's reasoning on Stoneridge's motion for summary judgment. The Court held that an issue of material fact existed as to whether SIS and Stoneridge entered into an oral subcontract agreement.[54] The Court detailed the factual support SIS had for its claim and cited supporting Georgia law.[55] Nothing in Stoneridge's current motion convinces the Court otherwise. The Court finds that SIS did not engage in sanctionable conduct by litigating the subcontract claim.

## V.   STONERIDGE'S OBJECTION TO SIS'S BILL OF COSTS

Finally, Stoneridge objects to SIS's bill of costs.[56] Following trial, SIS submitted a bill of costs totaling $13,082.33 and witness fees of $4,318.32.[57] Stoneridge objects on the grounds that SIS is not the prevailing party and it failed to substantiate the costs with receipts.[58] SIS has not responded to Stoneridge's objections. The Court agrees with Stoneridge that SIS is not entitled to costs.

---

[54]   ECF 137, 18–27.

[55]   *Id.*

[56]   ECF 244.

[57]   ECF 240.

[58]   ECF 244, at 1–6.

"Under Fed.R.Civ.P. 54(d), costs shall be allowed as of course to the prevailing party unless the court directs otherwise." *Gilchrist v. Bolger*, 733 F.2d 1551, 1556 (11th Cir. 1984). Rule 54(d) presumes that the prevailing party will be awarded costs "and it is incumbent on the losing party to overcome that presumption" because denial of costs is considered a penalty assessed against the prevailing party. *Id.* (quoting *Walters v. Roadway Express, Inc.*, 557 F.2d 521, 526 (5th Cir. 1977)). Though a district court has considerable discretion in denying or awarding costs, "[t]he rule in this circuit is that where the trial court denies the prevailing party its costs, the court must give a reason for its denial of costs so that the appellate court may have some basis upon which to determine if the trial court acted within its discretionary power." *Id.*

SIS's Second Amended Complaint was the operative complaint for the lion's share of this litigation.[59] That pleading asserted claims for (1) breach of the subcontract agreement or, in the alternative, the MCA; (2) promissory estoppel in the alternative to its claim for breach of the subcontract; (3) negligent misrepresentation in the alternative to its claim for breach of the subcontract; (4) fraud in the alternative to its claim for breach of the subcontract; (5) tortious

---

[59] ECF 55.

interference with economic advantage; and (6) misappropriation of trade secrets.[60] On Stoneridge's motion for summary judgment, the Court dismissed each of SIS's claims except those for breach of contract and misappropriation of trade secrets,[61] but also found that the subcontract agreement could only be enforceable as an oral agreement.[62] A month before trial began, SIS abandoned its subcontract agreement claim, indicating that it would only pursue its claims for breach of the MCA  and for misappropriation of trade secrets.[63] The jury found in favor SIS on its claim for breach of the MCA and against SIS on its trade secrets claim.[64] The jury also found in favor of Stoneridge on its counterclaim for services provided.[65]

In determining whether a party is a prevailing party, courts consider whether it prevailed "on 'any significant issue' and thereby achieves some of the benefits sought by bringing suit." *Loggerhead Turtle v. Cnty. Council of Volusia Cnty., Fla.*, 307 F.3d 1318, 1323 n.4 (11th Cir. 2002) (quoting *Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 791–92 (1989)). In cases such as this, "in

---

[60]   *Id.* ¶¶ 29–56.

[61]   ECF 137 at 53–54.

[62]   *Id.* at 27.

[63]   ECF 199.

[64]   ECF 232.

[65]   *Id.*

which both parties have partially prevailed and partially failed on their claims," the Court has wide discretion to allocate costs, including ordering that each party bear its own costs. *Wheatley v. Moe's Sw. Grill, LLC*, 580 F. Supp. 2d 1319, 1322 (N.D. Ga. 2008).

Considering the case as a whole, both SIS and Stoneridge prevailed on some claims and failed on others. SIS's claim that Stoneridge breached the subcontract agreement was the significant issue for most of this case, yet SIS voluntarily abandoned this claim shortly before trial. Stoneridge's motion for summary judgment was largely successful and, at trial, it prevailed on its services-provided counterclaim as well as SIS's trade secrets claim. Moreover, Scott Boedigheimer and Eric Newell prevailed on all of SIS's claims against them as individuals.[66] As for SIS, it succeeded on its claim that Stoneridge breached the MCA, which was also a significant claim in this case. Considering the mixed results, the Court finds it appropriate for SIS and Stoneridge to each bear its own costs. Stoneridge's objection is sustained.

---

[66] Boedigheimer and Newell did not file bills of costs and so the Court will not address whether they are entitled to costs as prevailing parties.

## VI.    CONCLUSION

SIS's motion for attorneys' fees and expenses [ECF 239]; Stoneridge's motion for judgment as a matter of law or, in the alternative, remittitur [ECF 241]; and Stoneridge's motion for sanctions [ECF 242] are **DENIED**. Stoneridge's objection to SIS's bill of costs [ECF 244] is **SUSTAINED**. The Clerk is **DIRECTED** to vacate SIS's bill of costs [ECF 240] and to close this case.

**SO ORDERED** this the 30th day of September 2021.

Steven D. Grimberg
United States District Court Judge